**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**


Blake Simpson, Tyler Douglas and
Coin Metric LLC,

              Plaintiffs,


    -against-                                    Civ. No.

Bernardo D. Cardoso, Capital Blue Global
Investments LLC, Joshua Blessing, Anna
Blessing, Kelly Haines, Olivia-Ari Corporation
(DBA Blessing Capital), World Wide Executive
Consultants, Michael Jordan, Ethan Ferrell,
Recovery Solutions Group, Todd Harris, Davanan
"Steve" Sughrim, and David Andrews.


              Defendants.
_____/


**<u>COMPLAINT</u>**

## TABLE OF CONTENTS

**INTRODUCTION**..............................................................................................**4**

**SUBJECT MATTER JURISDICTION AND VENUE** ....................................**7**

**PERSONAL JURISDICTION**.......................................................................**8**

**STATEMENT OF FACTS** ...........................................................................**9**
   **Plaintiffs Meet the RICO Defendants**...........................................................**9**
   **Investment of The Funds** ...........................................................................**11**
   **The Cardoso and Blessing Defendants Provide a False Bank Instrument.** ....................**12**
   **Defendants Harass and Attempt to Extort Money from Plaintiffs**...................................**19**
   **Plaintiffs have Reasonably Relied on the Fraudulent Misrepresentations of the RICO Defendants and Suffered the Loss of Millions of Dollars and Significant Reputational Damage as a Result of the RICO Defendants Conspiracy and Fraud** ...........................**20**

**COUNT I  Violation of RICO 18 U.S.C. § 1962 (C)  Against All Defendants** ....................**21**
   **The RICO Enterprise**.................................................................................**21**
   **Pattern of Racketeering Activity** ..............................................................**22**
     Pattern of Racketeering Activity: Multiple Instances of Mail Fraud and Wire Fraud in Violation of 18 U.S.C. §§ 1341. 1343 ....................................................**22**
     Pattern of Racketeering Activity:  Money Laundering in Violation of 18 U.S.C.§ 1956(a)(2) (A and B) .............................................................................................**24**
     Pattern of Racketeering Activity:  Transportation of Stolen Money and Securities in Violation of 18 U.S.C.§ 2314 ...........................................................................**24**
     Pattern of Racketeering Activity:  Receipt of Stolen Money of 18 U.S.C.§ 2314 ..............**25**
     Pattern of Racketeering Activity:  Bank Fraud in Violation of 18 U.S.C.§ 1344 (2). ........**25**
     Pattern of Racketeering Activity: Extortion In Violation of 18 U.S. Code § 875 ...............**26**
     Pattern of Racketeering Activity Alleged Against Each RICO Defendant ........................**26**

**COUNT II  Conspiracy to Violate RICO, Violation of 18 U.S.C. § 1962(d)  (Against All Defendants)**.................................................................................................**28**

**COUNT II  Civil Theft  Against the Cardoso and Blessing Defendants**...........................**29**

**COUNT IV  Fraud  Against the Cardoso Defendants, the Blessing Defendants, Steve Sughrim, World Wide Executive Consultants, Ethan Ferrell and Michael Jordan**...........**31**

**COUNT V  Fraudulent Misrepresentation Against the Cardoso Defendants, the Blessing Defendants, Steve Sughrim, Michael Jordan and Ethan Ferrell**.........................................**32**

**COUNT VI Breach of Contract Against the Blessing and Cardoso Defendants** ...............**33**

**PRAYER FOR RELIEF**...........................................................................**34**
   **1. On the First and Second Claims for Relief:**...........................................**34**
   **2. On the Third Claim For Relief:** .............................................................**34**
   **3. On the First, Second, Fourth and Fifth Claims for Relief:** ......................**34**

**APPENDIX A** ..........................................................................................**37**

**APPENDIX B EXHIBITS** ........................................................................**52**

2

**Exhibit 1- Contract with Olivia-Ari Corporation (DBA Blessing Capital), and Joshua Blessing.**................................................................................................................ 52
**Exhibit 2- Contract with Bernardo D. Cardoso and Capital Blue Global Investments LLC.** ................................................................................................................................... 52
**Exhibit 3- Cardoso's Confirmation of the Receipt of Funds**........................................ 52
**Exhibit 4 – Copy of the Purported (and Fraudulent) SBLC**........................................ 52
**Exhibit 5 – Confirmation of the Wire of an Additional $25,000.00 to Cardoso.**............. 52
**Exhibit 6 – Email from Ahmet Gulen Confirming that the SBLC is a Fraud**................. 52
**Exhibit 7 – Blessing Invoice for $300,000.00.**............................................................ 52
**Exhibit 8 – Email to Cardoso Declaring the SBLC to be Fraud.**................................... 52
**Exhibit 9 – Email from Cardoso** ................................................................................ 52
**Exhibit 10- Email from Anna Blessing**....................................................................... 52
**Exhibit 11- Email from Plaintiffs to Anna Blessing** .................................................. 52
**Exhibit 12 – Email from Tod Harris** .......................................................................... 52
**Exhibit 13 – Demand from Tod Harris for and Additional $200,000.00** ...................... 52

Plaintiffs Mr. Blake Simpson and Mr. Tyler Douglas are US citizens domiciled in the State of Washington.  Plaintiff Coin Metric LLC is a Limited Liability Corporation registered in the State of Washington. Coin Metric is owned 100% by Blake Simpson and Tyler Douglas.  Plaintiffs, both individually and jointly, by and for their undersigned counsel, Blanca M. Valle and Lawrence Daniel O'Neill, file this Complaint against Capital Blue Global Investments LLC/ Bernardo D. Cardoso, with an address at 3211 Ponce De Leon, Coral Gables FL 33134 (The Cardoso Defendants), Joshua Blessing, Anna Blessing, Kelly Haines and Olivia-Ari Corporation dba Blessing Capital, with an address at 1 South Church Ave STE. 1200, Tucson, Arizona 85701 (the Blessing Defendants), World Wide Executive Consultants (WWEC), Michael Jordan (Jordan), and Ethan Ferrell (Ferrell) all with an address at 1838 Chapel Brook Way, Greensboro, North Carolina 27405, Recovery Solutions Group LLC (RSG), Robb Sowers (Sowers), Todd Harris (Harris) and David Andrews (Andrews) all with an address at 1008 Mattlind Way, Milford, DE 19963 and Davanan "Steve" Sughrim (Sughrim) with an address at 15127 NE 24th St. APT 262, Redmond, WA 98052 (collectively, the "RICO Defendants"), and aver as follows:

**INTRODUCTION**

1.  This case involves a multi-state criminal conspiracy organized and operated by Bernardo D. Cardoso, Joshua Blessing, Anna Blessing and Kelly Haines, through their respective companies, Capital Blue Global Investments LLC and Olivia-Ari Corporation (dba Blessing Capital), aided and abetted by World Wide Executive Consultants, Michael Jordan, Ethan Ferrell, Recovery Solutions Group LLC (RSG), Robb Sowers, Todd Harris, David Andrews and Davanan "Steve" Sughrim.

2. The sole purpose of this conspiracy was to defraud, and otherwise cause tortious injury to Plaintiffs by means of a plan the RICO Defendants conceived in the State of Florida and executed in Arizona, Washington State and Pennsylvania.

3. The criminal enterprise's aim was to steal at least $650,000 (Six Hundred and Fifty Thousand U.S. Dollars) from Plaintiffs.  Over the course of the past two years,  Defendants have engaged in a complex conspiracy contracting for and collecting fees for non-existent financial services, representing to Plaintiffs that they were capable, ready, willing and able to provide Plaintiffs with corporate financing, claiming that they had issued to Plaintiff's bank a financial instrument known as a Stand-by Letter of Credit (SBLC), sending Plaintiffs a fraudulent copy of an SBLC, encouraging and inciting Plaintiffs to engage in bank fraud on their behalf and engaging in false invoicing and extortion in an attempt to extract further funds from Plaintiffs which Defendants knew were not owed.

4. As a key part of this fraud, Defendants,  repeatedly, by mail and electronic communications and telephone, misrepresented the status of their ability for procure bank loans and/or actual financial instruments for Plaintiffs as well as their ability to conduct various financial transactions, so as to induce Plaintiffs to invest funds in sham transactions.  They then stole these funds.

5. To affect this plan, the Cardoso Defendants and the Blessing Defendants entered into contracts with Plaintiffs promising financial services that they knew that they had no ability to provide.

6. Through those contracts they induced Plaintiffs to pay over $150,000 as "deposits" with a promise of refunds and damages should the proposed financial services not be performed.

7. These payments were solicited in person by Defendant Sughrim, by mail, email and telephone, by the Blessing Defendants, Jordan, Ferrell and the Cardoso Defendants, supported by the false and fraudulent statements and fabricated and false bank instruments.

8. Upon the payment of these funds, Defendants illegally converted them for their own use.

9. This effort was organized, directed and funded from the State of Florida by Cardoso, through Capital Blue Global Investments LLC, a US company domiciled in Coral Gables, Florida and by the Blessing Defendant,  all US citizens domiciled in the State of Arizona and California, who were the jointly the principal organizers and major beneficiaries of the fraud.

10. Induced by the sham offers, Plaintiffs signed investment agreements with the Cardoso Defendants and the Blessing Defendants and then, pursuant to those agreements transferred funds to the Defendants by interstate bank deposit and interstate wire transfer.

11. Plaintiffs were repeatedly assured both in face to face meetings, in written contracts, by telephone communications and by the written promise, sent by mail and by electronic mail, from Defendants that the invested funds would be held securely "in trust".

12. Upon receipt of these funds Defendants, without the authorization of Plaintiffs and in direct violation of the agreement between them, immediately converted these funds for their own use.

13. Defendants have subsequently engaged in numerous criminal acts in an attempt to retain the stolen funds. Defendants have produced fraudulent invoices and have delivered to Plaintiffs a fraudulent financial instrument allegedly drawn on the Royal Bank of Canada.

14. The Cardoso Defendants, Blessing Defendants, World Wide Executive Consultants and Sughrim then incited, indeed demanded, that Plaintiffs present this bank instrument, which

6

they knew to be fraudulent, to a U.S. financial institution so as to borrow funds against it and to pay Defendants additional funds from the proceeds of this fraudulent transaction.

15. When Plaintiffs refused to cooperate in this fraudulent and criminal activity the Blessing Defendants produced false invoices and demanded the payment of $300,000.00 in additional funds.

16. When Plaintiffs refused to pay these funds the Blessing Defendants, the Capital Blue Defendants and Recovery Solutions LLC/Rob Sowers, Todd Harris and David Andrews engaged in activities to coerce and intimidate Plaintiffs and threatened and harassed Plaintiffs via threatening mail, telephone calls and electronic communications, demanding an additional $500,000.00 from Plaintiffs.

**Commented [BS2]:** After demanding $300,000, RSG then demanded an additional $200,000. I want to make sure that is what this sentence is saying.

17. The RICO Defendants' conduct violates the Racketeer Influenced and Corrupt Organizations Act, 28 U.S.C. § 1961 et seq., with predicate acts of mail and wire fraud, bank fraud, laundering of financial Instruments and extortion, among others. In addition, Defendants' conduct constitutes civil theft, breach of contract and common law fraud. As a result, Defendants' misconduct entitles Plaintiff's damages, and other relief.

### SUBJECT MATTER JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331 and 1332, and under 18 U.S.C. § 1964(c). Plaintiffs' first claim for relief arises under 18 U.S.C. § 1961 et seq., as hereinafter more fully appears. There is also complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

19. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), as a substantial number of the events giving rise to this action occurred in this District, the principal criminal actor in

this matter resides in this District and a substantial part of property that is the subject of the action is situated in this District, and also under 18 U.S.C. § 1965.

## PERSONAL JURISDICTION

20. Exercise of jurisdiction over Defendants is reasonable and proper in this District because Bernardo Cardoso and Capital Blue Global Investments LLC are domiciled in Coral Gables in the State of Florida.  Through their activities conducted from the State of Florida they have served as the co-ringleader in the enterprise to defraud Plaintiffs, working closely with and coordinating the other RICO Defendants in this action. For Plaintiffs claims for violations of 18 U.S.C. § 1962 and Florida state law, exercise of jurisdiction is proper pursuant to 18 U.S.C. § 1965(a) and Fla. Stat § 48.193.

21. Exercise of jurisdiction the Blessing Defendants is reasonable and proper in this District because, under the direction and in conspiracy with the Capital Blue Defendants they have served as the co-central focus of the criminal enterprise to defraud Plaintiffs, working closely with the other RICO Defendants in this action, and have been the recipient of a portion the funds illegally transferred. For Plaintiffs claims for violations of 18 U.S.C. § 1962 and Florida state law, exercise of jurisdiction over the Blessing Defendants is proper pursuant to 18 U.S.C. § 1965(a) and Fla. Stat § 48.193.

22. Defendants Michael Jordan, World Wide Executive Consultants, Steve Sughrim, Rob Sowers, Todd Harris and Recovery Solutions Group LLC are all residents of the United States and all acted in conspiracy with and under the direction of the Capital Blue Defendants and the Blessing Defendants.  For Plaintiffs claims for violations of 18 U.S.C. § 1962, the exercise of jurisdiction over each of these defendants is proper in this District pursuant to 18 U.S.C. § 1965(b).  The ends of justice require application of the nationwide

service provisions of 18 U.S.C. § 1965(b) because there is no district in which all of the RICO Defendants could otherwise be tried together. For Plaintiffs claims under Florida state law, exercise of jurisdiction over Defendants is proper pursuant to Fla. Stat § 48.193.

## STATEMENT OF FACTS

*Plaintiffs Meet the RICO Defendants*

23. Plaintiffs are honest and well-respected businessmen.  Coin Metric LLC is a reputable business engaged in the mining, purchase and sale of crypto currencies.

24. To expand their business the Plaintiffs set out to obtain corporate financing for Coin Metric LLC, and specifically for a crypto currency mining initiative.  In this effort they held discussions with Defendant Sughrim, with whom they were acquainted, on the 11th of December 2017. Sughrim informed Plaintiffs that his friend, Joshua Blessing, has ability to provide a loan for tens of millions of dollars.

25. On the next day Plaintiffs met in person with Defendant Sughrim.  At that meeting he introduced Plaintiffs to Defendant Joshua Blessing who attended the meeting telephonically.  At this meeting Defendant Blessing stated that he could arrange for Coin Metric get financing of between $25,000,000 to $100,000,000. On the call, Joshua stated that Blessing Capital would charge a $50,000 fee, refundable in the event that the necessary funding was not provided, 1% commission fee upon success, and 5% of one of Coin Metric's Initial Coin Offerings (ICOs). [ Appendix A-#1.]

26. After the call, Plaintiffs were skeptical of the transaction, however Defendant Sughrim reiterated the validity of the transaction and emphasized that he works closely with Blessing Capital, has known Defendant Blessing for a long time.

27. Based upon these assurances and the telephonic conversation with Defendant Blessing, on the 14th of December Coin Metric engaged Blessing Capital to obtain corporate financing. Once the fee agreement was processed, Blessing stated that he will work with the lender's compliance officer to set up an on-boarding call. After the on-boarding process is complete, Coin Metric will pay a processing fee and then Blessing Capital will issue the lender's application and funding agreement. [ Appendix A-#2]

28. On the 14th of December 2017 Plaintiffs signed the Funding Agreement and returned it to Defendant Sughrim for transmittal to Blessing Capital. [ Exhibit 1]

29. Subsequent to the signature of the Funding Agreement there was a conference call with Defendants Sughrim, Blessing and Haines.  Blessing indicated that Defendant Kelly Haines performs compliance for Blessing Capital, and he has access to classified information based on his military background. Defendant Blessing also asked Plaintiffs not to disclose his 1% fee to any of the other parties in the transaction, especially Michael Jordan from World Wide Executive Consultants. Blessing claimed that he does these transactions very seldom, about once per year, and that this is "world changing" money that most people will never see. Defendant Blassing also stated that since Plaintiff Simpson has a "squeaky clean" record, it was best if he was the signer on all documentation. [Appendix A-#3]

30. This was followed on the same day by a second conference call with Defendants Sughrim, Blessing, Haines and Jordan.  On that call Defendant Jordan, from World Wide Executive Consultants, introduced himself and explained how he was performing compliance for both sides of the transaction. He further explained how he had a relationship with the provider (Bernardo Cardoso) on other transactions. He stated the provider of the instrument is very good and it is rare to find someone who can do an MT-760 as there are many scams out

there. Plaintiffs declared that they had no idea what an MT-760 was and Jordan explained what an SBLC and MT-760 is and how it works, claiming that such a financial instrument was as good as cash and could be presented to their bank in exchange for cash. Defendant Jordan indicated that he has a background in finance and entertainment. He claimed that some of his previous clients include the Oakland Raiders. Jordan said he would work with the Cardoso to get the Plaintiffs the contract and that they wanted to move on this quickly. The expectation was that this transaction would take between 30 - 90 days. [Appendix A -#4]

31. On the same day, based upon the representations made in these conference calls by Defendants Blessing and Jordan, Plaintiffs sent Defendant Blessing $50,000.00.  The receipt of these funds was confirmed Defendant Blessing on the 16th of December 2017. [Appendix A-#6]

32. On the 20th of December Defendant Blessing sent, by electronic mail, a copy of a contract from Defendant Cardoso/Capital Blue promising a deliver a Standby Letter of Credit (SBLC) with a face value of One Hundred Million ($100,000,000.00 United States Dollars) (the Funding Agreement). This contract specified that Plaintiffs were to pay Cardoso $100,000.00, in two tranches, as a refundable deposit.  This fee was to be fully refundable should Defendant Cardoso not deliver as per the contract. [Exhibit 2]

*Investment of The Funds*

33. On December 15th, 2017 Plaintiffs signed and returned the Funding Agreement to Defendant Blessing to be forwarded to Defendant Cardoso. [Appendix A-#13 and Exhibit 2]

34. On the 21st of December Plaintiff had a conference call with Defendants Blessing, Sughrim, and Haines.  On this call Defendant Blessing told Plaintiffs how great this contract was, and that Plaintiffs are lucky the provider is willing to guarantee Plaintiffs $2M if he defaults on the contract. He reiterated that Plaintiffs are in a really good place. He stated that Plaintiffs needed to chill out and wait for the provider to execute the agreement. [ Appendix A- #12]

35. On the 22nd of December 2017 Defendant Blessing sent Plaintiffs, by email, the fully executed Funding Agreement between Plaintiffs and Cardoso/Capital Blue.  Defendant Blessing also demanded that Plaintiffs get a banker's draft/cashier's check in the amount of $75,000 drawn to Capital Blue and deposit it in the account of Capital Blue so as to quickly to close the deal. [Appendix A-#12]

36. On the 22nd of December Plaintiff Douglas deposited a cashier's check of $75,000 into the account specified on the contract (which Defendant Blessing confirmed). [Appendix A-#16].

37. These funds were to be held as a deposit by the Capital Blue Defendants pending the performance of the contract by Mr. Cardoso.

38. It is Defendant's information and belief that both defendants immediately converted these funds to their own use in violation of 18 U.S. Code § 1956 and 18 U.S. Code § 1957 and Florida Statute 896 and Florida Statute 812.014

***The Cardoso and Blessing Defendants Provide a False Bank Instrument.***

39. On the 29th of December 2017 Plaintiffs had a conference call with Defendants Sughrim, Blessing and Haines to discuss the transaction with regard to the prospective SBLC.  At this meeting Plaintiffs further indicted their inexperience in banking matters and posed

12

> **Commented [BS3]:** Do we want to spell out $2M to $2,000,000.00? And all the other places in the document where we use "M" to designate millions of dollars.

several questions to Blessing regarding the SBLC, in particular regarding the banking necessary to receive the instrument and the ability to draw financing from the SBLC. - Blessing said Plaintiffs do not need anything special and should just relax. Blessing even said this transaction is "like putting your 5-year-old on dirt bike (he's just got to do it)". Further Blessing said that Plaintiffs should be able to get 75 - 90% of the face value of the instrument in immediately available funds. Further, Blessing continued to reiterate that Plaintiffs had nothing to worry about because if the provider doesn't execute, they will be paid $2M. Defendants told everyone to relax and do yoga. Blessing assured Plaintiffs that he would be with us until the end of the transaction. [ Appendix A-#18].

40. On the 5th of January 2018 in a follow-up call between Plaintiffs and Defendants Sughrim, Blessing, Haines and Jordan, Defendant Jordan stated the instrument would come from a domestic institution, most likely Merrill Lynch or Wells Fargo. Defendant Jordan also said the best way to get $100M into our bank account was to do 2 tranches ($25M and $75M) and Defendant Blessing agree with this strategy. They convinced Plaintiffs that the bank would be comfortable with Plaintiffs if they staged it in this manner. Jordan also stated that he could do the monetizing of the instrument for 15 – 30 thousand dollars.  On this call Defendant Jordan reiterated that he's here to see the entire process out with Coin Metric. Jordan also stated he had physically met up with Bernardo Cardoso and spent time at the bank with him to get this resolved. Defendants Jordan and Joshua Blessing told Plaintiffs to relax and chill out over the weekend. Jordan once again bragged of his financial abilities and stated that he was "hanging out with Sean Combs and helping this group obtain funding to buy the Carolina Panthers."

41. On the 8th of January 2018 Defendant Cardoso confirmed the receipt of the first deposit of $75,000.00 via an email from Defendant Blessing that contained a signed/notarized letter from Bernardo Cardoso stating that the funds were received.  [Exhibit 3]

42. On the 10th of January 2018 Defendant Blessing sent, via email, a purported copy of an SBLC with a face value of €25,000,000.00 (Twenty-Five Million Euro) drawn on the Cayman Island branch of the Royal Bank of Canada in favor of Ahmet Gulen. It was and alleged by Defendants Blessing and Jordan that this financial instrument had been sent to Plaintiffs account in the Bank of America. [Exhibit 4]

43. Plaintiff Douglas immediately called Defendant Blessing and asked him why the amount was 25 million Euro instead of USD and Defendant Blessing told him that they probably made a mistake.   However, Defendant Blessing instructed Plaintiff not to bring it up and just pocket the remainder of the funds. Plaintiff also brought up the fact that the bank was not domestic, and Blessing told him that this is the number one bank in Canada. [Appendix A- #23]

44. The next day, the 11th of January 2018, Plaintiff Douglas went to the Bank of America, Kingsgate, Washington branch and checked to see if the agent could see the SBLC credited in Coin Metric's bank account.   Bank of America confirmed that no such SWIFT transmission had been received.

45. Plaintiffs immediately contacted Defendant Jordan who stated that the SBLC had been sent and that Plaintiffs had to wire Defendant Cardoso $25,000 or Plaintiffs would default on the agreement and would forfeit all funds paid to date. [Appendix A-#22]

46. On the 11th January 2018 Plaintiffs wired a further $25,000.00 to the bank account of Defendant Cardoso. [ Exhibit 5]

14

47. On the dame day, the 11th of January 2018, without the knowledge of agreement of Plaintiffs, Defendant Blessing instructed a banker to look into Coin Metric's bank account to see if the bank instrument was credited. Coin Metric's banker called Plaintiff Douglas and asks why an individual from California is looking into Plaintiff's bank account. Plaintiff's banker then locked the account so other small business bankers cannot access the account.

48. On the 12th of January 2018 Plaintiff Douglas again meets with Bank of America to attempt to track the alleged instrument. At this meeting Plaintiff is emphatically informed that no such bank guarantee has been received and that the copy of the instrument Plaintiffs received from Defendant Cardoso is a fraud.

49. Immediately after meeting with the bank, Plaintiffs initiate a conference call with Defendants Blessing, Haines and Jordan. Plaintiff Douglas started off the meeting by saying there was discrepancy with the MT-760, and it had not been received at the Bank of America. This infuriated Blessing. He started using an excessive amount of profanity and said, "you will do this fucking transaction." Plaintiff Douglas informed Blessing that the bank indicated it was a fraud and Plaintiffs had found sources that stated any bank documentation involving the purported owner of the SBLC, Ahmet Gulen and the Royal Bank of Canada, were fraudulent. Jordan jumped on the phone and said, "he would get the bottom of this and he doesn't play games". [ Appendix A-#25]

50. Immediately after this call there was a second conference call between Plaintiffs and Defendants Blessing, Haines and Cardoso. On this call Plaintiffs brought up their concerns as to the validity of the instrument. Defendant Cardoso stated he "doesn't play games" and he would address the concerns about the instrument. He stated that he actually knows

the ordering customer in Turkey. He said the guy is very paranoid. Defendant Cardoso said he would figure out if something funny was going on. Cardoso encouraged Coin Metric to get a brokerage CMA account as it would be a better account to receive funds into (however, this was not specified in the contract). [Appendix A-#26]

51. Defendant Blessing was connected in the middle of the call and started yelling at Plaintiffs for wanting evidence of the validity of the instrument. Defendant Blessing made it very clear that this is not Blessing Capital's Department and that Plaintiffs were at fault for not providing Cardoso international banking codes. [Appendix A-#27]

52. Plaintiffs sent Defendant Cardoso the international banking information for the Bank of America that was requested.  Despite that no bank instrument was ever delivered to Bank of America.

53. On the 17th of December Defendant Haines offered to assist Plaintiffs in establishing a bank account that could receive and discount the SBLC. [ Appendix A-#29].

54. On the 18th of January Defendant Haines instructs Plaintiffs to open a brokerage account at Merrill Lynch.  Subsequently Plaintiffs meet with representatives of Merrill Lynch and explain that Coin Metric has an SBLC that needs to be monetized. The Merrill Lynch representatives seem confused as to why Coin Metric would have an SBLC. Merrill Lynch refuses the application.

55. On the 19th of January Plaintiff have a conference call with Defendants Sughrim, Blessing and Haines.  At this meeting Blessing and Haines introduced Anna Blessing to Plaintiffs. On this call the Defendants said that the SBLC was at risk, and finance is all about the energy. Plaintiffs were blamed for the failure of getting a CMA account at Merrill Lynch for negative energy and bad posture. Anna Blessing asked if Plaintiffs had ever watched

16

the show Billions. She said Plaintiffs need to start acting with that type of energy with the bank. Anna also stated that everyone on the call had put a lot of resources into making the SBLC possible. At the end of the call, Plaintiffs were tasked with putting together a script for the Blessing Capital Team to review before approaching another bank. [Appendix A- #32]

56. In a series of calls and emails on the 20th and 21st of January Defendants Blessing, Haines, Anna Blessing and Sughrim proceeded to advise Plaintiffs on approaching another bank with the SBLC to obtain funding, even though Defendants were aware at the time that the SBLC was fraudulent. As these discussions progressed Anna Blessing set up a conference call to discuss the bank script and how to approach the bank. Plaintiffs were told to watch Billions and have positive energy. Defendants went over a number of words not to say at the bank. Phrases to talk to the banker about. Anna Blessing and Haines even proposed using a DBA to shield the core function of the business. Blessing Capital was very insistent that an older person accompany Plaintiffs to the bank, specifically Defendant Sughrim. In addition, Haines said he had an associate at Morgan Stanley who Plaintiffs could potentially work with. [ Appendix A-##32-35]

57. On the 23rd of January at the insistence of the Blessing Defendants and Jordan Plaintiffs set up a meeting with Fidelity Investments to explore depositing and lodging the SBLC.

58. On the same day, immediately after the Fidelity meeting, the Plaintiffs received an email from Ahmet Gulen, the alleged beneficiary of the SBLC, which points to his personal web page and instructs Plaintiffs to read the fraud alert notice carefully. This email confirms that the purported SBLC is fraudulent. [Exhibit 6]

59. It immediately became clear to Plaintiffs that the bank instrument was fraudulent, and that the Blessing Defendants were encouraging the Plaintiffs to engage in bank fraud in violation of 18 U.S.C § 1344.  Plaintiffs immediately terminated discussions with Fidelity.

60. On the same day the Blessing Defendant send the Plaintiffs and invoice for 1% of the value of the fake SBLC, $300,000.00 [Exhibit 7]

61. On the 23rd of January Plaintiffs reject the invoice, indicating to the Blessing Defendants they Plaintiffs have not received a MT-760 or any funds and their bank has not been able to verify that the instrument was ever sent.

62. On the 27th of December Plaintiffs contact Defendant Cardoso and indicate that the SBLC copy that he provided is a fraud.  [ Exhibit 8]

63. Defendant Cardoso responds with an email claiming that Plaintiffs sent him a domestic swift code and then later sent him an international swift code. He then dismisses any concern about Ahmet Gulen and claims it is Plaintiffs fault that they could not receive the instrument. Lastly, he offers to re-issue an instrument for additional fee. [Exhibit 9]

64. In response to these claims by Plaintiffs, on the 31st of January Defendant Anna Blessing sends an email to Plaintiffs stating that Plaintiffs are in Gross Breach of Contract based on the correspondence with Defendant Cardoso. She goes onto say that she will have to file a legal complaint against both Plaintiffs Simpson and Douglass as well as Blake all company officers and members. [ Exhibit 10 and Appendix A-#44]

65. In response to this email, on the 31st of January Plaintiffs inform the Blessing Defendants that the validity of the instrument is in question because simple compliance questions cannot be answered and that they have no intention of paying the proffered fake invoice. [Exhibit 11 and Appendix A-#45]

*Defendants Harass and Attempt to Extort Money from Plaintiffs*

66. When Plaintiffs refused to participate in this criminal bank fraud, the Defendants immediately embarked upon a coordinated campaign to extort $300,000 (Three Hundred Thousand U.S. Dollars) from Plaintiffs through the production of false invoices, phone calls and emails threatening legal action and "other consequences".

67. On the 2nd of February 2018 a gentleman named Jim Peterson from a company name Apex contacted Plaintiffs on behalf of the Blessing and Cardoso Defendants threatening to personally visit Plaintiffs to obtain funds owed to Defendants. [ Appendix A-#47]

68. On or about the 4th of February Defendants engaged the services of Recovery Solutions (RSG) to attempt to extort money from the Plaintiffs, even though Defendants and RSG were aware that the invoices were false and that the claimed debt was bogus and based upon fraud, they proceeded to launch a campaign of harassment against Plaintiffs to extort these funds from Plaintiffs.  These actions were undertaken in clear violation of 18 U.S. Code § 1951, 18 U.S.C. §875 and Florida Statute 836.05.

69. On the 5th of February Defendant Harris from RSG called and left a message stating that he wants to try to figure out if Plaintiffs can come to resolution with Olivia-Ari Corp (dba Blessing Capital) prior to litigation. He stated that Plaintiffs owe Olivia Aria $300,000. On the same date Defendant Harris sends an email explaining that Blessing Capital has retained RSG LLC against Plaintiffs Simpson and Douglas and Coin Metric LLC for the purpose of filing complaints and litigation/credit reporting. He notes that he'll let Plaintiffs know when this will be scheduled in the courts. Also, Todd Harris included Plaintiff's banker, Erin Steele, on the email. [Exhibit 12]

19

70. On the 8th of February 2018 Defendant Harris sent a second email stating that there is conference call set for 2/12/2018. He states that the actual Litigation Filing & Credit Reporting against all Plaintiffs has been scheduled for Thursday February 15th, 2018. He further states that with the addition of "interest" of $200,000.00 that the debt is now $500,000.00 [Exhibit 13 and Appendix A-#52]

71. On the 12th of February Defendant Harris calls Plaintiff Douglas and states that he has scheduled a call with Blake's employer, Boeing, to talk about this situation.

72. On the 16th Defendant Harris calls and leaves a voicemail stating that complaint has been filed and RSG has applied to suspend Plaintiffs Visas. [Appendix A-#53]

73. Starting on the 16th of February 2018 Defendant Andrews made a number of telephone calls demanding payment and threatening litigation [Appendix A-#54].

***Plaintiffs have Reasonably Relied on the Fraudulent Misrepresentations of the RICO Defendants and Suffered the Loss of Millions of Dollars and Significant Reputational Damage as a Result of the RICO Defendants Conspiracy and Fraud***

74. Plaintiffs relied on the various mail, electronic and telephonic representations of the RICO Defendants.

75. As a consequence of this reliance Plaintiffs have lost $150,000.00 in cash invested with the RICO Defendants, $250,000.00 in cash invested by Plaintiffs in anticipation of the corporate funding promised by Defendants, as well as over $90,000,000.00 (Ninety Million US Dollars) in lost profits and opportunity costs.

76. In addition, Plaintiffs have suffered significant reputational damage with their financial institution and emotional and physical distress.

**COUNT I**
**Violation of RICO 18 U.S.C. § 1962 (C)**
(Against All Defendants)

77. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 23 through 76 of this complaint as if more fully set forth herein.

78. At all relevant times, Plaintiffs are persons within the meaning of 18 U.S.C.§§ 1961(3) and 1962(c).

79. At all relevant times, each RICO Defendant is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

*The RICO Enterprise*

80. The RICO Defendants and their co-conspirators are a group of persons associated together in fact for the common purpose of carrying out an ongoing criminal enterprise, as described in the foregoing paragraphs of this Complaint; namely, through a multi-faceted campaign of lies and fraud, to induce Plaintiffs into investing hundreds of thousands of dollars with the RICO Defendants and their co-conspirators.

81. These RICO Defendants and their co-conspirators have organized their operation into a cohesive group with specific and assigned responsibilities and a command structure, operating, directed and funded in the United States by the Cardoso Defendants and the Blessing Defendants.  The criminal enterprise has generally been structured to operate as a unit in order to accomplish the goals of their criminal scheme.

82. Defendants Cardoso and Capital Blue have been responsible for oversight of the scheme to defraud and have directed other conspirators to take actions necessary to accomplish the overall aims of the criminal enterprise.  Specifically, Defendant Cardoso directed the

activities of Defendant Jordan and the Blessing Defendants so as defraud Plaintiffs out of so called "deposits" of $150,000.00 paid ostensibly for the issuance of business loans to Plaintiffs.

83. Defendant Cardoso directed the activities of Defendants Jordan, Ferrell and WWEC to transfer funds to Cardoso for the purposes of the criminal conspiracy.

84. The RICO Defendants and their co-conspirators constitute an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), referred to hereinafter as the "Enterprise." Each of the RICO Defendants participated in the operation or management of the Enterprise under the overall direction of the Cardoso Defendants and the Blessing Defendants.

85. At all relevant times, the Enterprise was engaged in, and its activities affected interstate commerce within the meaning of 18 U.S.C. § 1962(c).

***Pattern of Racketeering Activity***

86. The RICO Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U. S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c), to wit:

***Pattern of Racketeering Activity: Multiple Instances of Mail Fraud and Wire Fraud in Violation of 18 U.S.C. §§ 1341. 1343***

87. As described herein, the RICO Defendants engaged in a wide-ranging scheme or artifice to defraud Plaintiffs. In furtherance of their scheme, and as described herein and itemized in Appendix A hereto, the RICO Defendants transmitted, or caused to be transmitted, by

means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, and also caused matters and things to be placed in any post office or authorized depository, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier, including, but not limited to, the following:

88. Emails and website postings incorporating false and misleading statements regarding the financial status and business of the Cardoso Defendants and the Blessing Defendants;

89. Mailed and emailed contracts and other agreements which were fraudulent;

90. Wirings and/or mailings between and among the RICO Defendants concerning the proposed funding of the Plaintiffs, the status of such funding;

91. The sending by mail and electronic mail of fraudulent financial instruments from the Cardoso Defendants through Jordan and the Blessing Defendants, knowing, indeed encouraging Plaintiffs to present the fraudulent financial instrument to various financial institutions in an attempt to defraud such financial institutions for the financial benefit of Defendants.

92. Numerous emails, telephone calls and mailed documents covering-up the theft of the funds entrusted to Defendants by Plaintiffs and the fraudulent nature of the proffered financial instrument;

93. Plaintiffs incorporates by reference the attached Appendix A, which sets forth particular uses of wire and mail communications in furtherance of the RICO Defendants' scheme or artifice to defraud that constitute violations of 18 U. S.C. §§ 1341 and 1443, including which individual defendant caused the communication to be mailed or wired, when the communication was made, and how it furthered the fraudulent scheme.

94. The RICO Defendants sent to Plaintiffs numerous false communications as part of their scheme to induce Plaintiffs to invest funds in their scheme.

95. The RICO Defendants' false and misleading statements have been relied on by Plaintiffs and a result of that reliance the RICO Defendants' false and misleading statements have caused Plaintiffs substantial damages.

***Pattern of Racketeering Activity:  Money Laundering in Violation of 18 U.S.C.§ 1956(a)(2) (A and B)***

96. Defendants have, on the 16th of December 2017, on the 22nd of December 2017 and on 11th of January knowingly caused the transportation, transmission, and/or interstate transfer to or from themselves and to other parties, the illegally obtained funds that were stolen from the Plaintiffs.

97. Defendants Cardoso, Blessing and Jordan have, on the 10th of January 2018, knowingly caused the transmission in interstate commerce of a fraudulent banking instrument which they knew would be presented to a financial institution so as to obtain funds.

***Pattern of Racketeering Activity:   Transportation of Stolen Money and Securities in Violation of 18 U.S.C.§ 2314***

98. Defendants have obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and have transported or caused to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud Plaintiffs.

99. Defendants have, on the 10th of January, transported in interstate or foreign commerce a falsely made, forged and counterfeited securities instrument, knowing the same to have been falsely made, forged, altered, or counterfeited.

24

*Pattern of Racketeering Activity: Receipt of Stolen Money of 18 U.S.C.§ 2314*

100.     Defendants, on the 16th of December 2017, on the 22nd of December 2017 and on 11th of January 2018 have received money of the value of $5,000 or more, or, which have crossed a State boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken;

101.     Defendants have, on the 10th of January, sold, a falsely made, forged and counterfeited securities in the form of a Stand-by Letter of Credit in interstate and foreign commerce

*Pattern of Racketeering Activity: Bank Fraud in Violation of 18 U.S.C.§ 1344 (2).*

102.     Defendants, on the 16th of December 2017, on the 22nd of December 2017 and on 11th of January 2018, knowingly took funds owned by Plaintiffs and transferred such funds to accounts held in the name of Bernardo Cardoso and Joshua Blessing by means of false or fraudulent pretenses, representations, or promises.

103.     On the 10th January 2018 RICO Defendants sent to Plaintiffs a bank instrument drawn on Royal Bank of Canada, Cayman Island Branch, which they knew to be fraudulent.

104.     When confronted with the fraudulent nature of the bank instrument they became aggressive, intimidating and attempted to extort funds from Plaintiffs.

105.     Over the course of several months the RICO Defendants encouraged, instigated, indeed demanded, that the Plaintiffs present this false financial instrument to banks with

the intent to obtain a loan of funds against that instrument, which funds would then be delivered to Defendants.

***Pattern of Racketeering Activity: Extortion in Violation of 18 U.S. Code § 875***

106.    When Plaintiffs declined to participate the Defendants scheme to defraud the Bank of America and Fidelity, Defendants became threatening.  On the 31st of January 2018 Defendant Anna Blessing threatened legal action against Plaintiffs based on a fraudulent invoice in the sum of $300,000.00.

107.    On multiple occasions in February 2018, and specifically on the 5th , 8th and 12th of February 2018 Defendants Todd Harris, Recovery Solutions and David Andrews, by telephone and email threatened legal action against Plaintiffs, destruction of credit, notification of employers, destruction of banking relationships and other acts against Plaintiffs if they refused to pay $500,000.00 in violation of 18 U.S. Code § 875, 18 U.S. Code § 1951 and Florida Statute 836.05.

108.    On repeated occasions on or about the 25th of February Defendant David Andrews made abusive the threatening telephone calls to Plaintiffs.

***Pattern of Racketeering Activity Alleged Against Each RICO Defendant***

109.    Defendants have committed numerous mail and wire fraud violations, including those identified in Appendix A in which the RICO Defendants used or caused to be used the mail or wires in furtherance of the RICO Defendants' scheme to defraud.

110.    Defendants have committed mail fraud, wire fraud and engaged in money laundering the interstate transportation of stolen funds by knowingly causing funds to be

transported, transmitted, or transferred knowing that such funds were stolen from the Plaintiffs.

111.    Defendants have knowingly transported in interstate commerce a fraudulent financial instrument with the intent of defrauding Plaintiffs and their banks.

112.     The mail fraud, wire fraud, money laundering, bank fraud violations, including those identified in Appendix A, were undertaken by Defendants in furtherance of the RICO Defendants' scheme to defraud.

113.    As a direct and proximate result of the RICO Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. §  1962(d), Plaintiffs have been injured in its business and property, including loss of funds, loss of financial opportunity related to those funds and damage to Plaintiffs' reputation and goodwill; and the attorneys' fees and costs to defend itself in objectively baseless, improperly motivated threats of legal action disparagement of their credit and reputations, the attorneys' fees and costs associated with exposing the RICO Defendants' pervasive fraud and in recovering the funds stolen by the RICO Defendants

114.    Pursuant to 18 U. S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

115.    Plaintiffs is further entitled to, and should be awarded, a preliminary and permanent injunction that enjoins Defendants, their assignees and anyone else acting in concert with them-from transferring any funds held in any account under their control to any person other than the Plaintiffs until this Court determines the merits and enters judgment on Plaintiffs' claims against the Defendants in this action.

WHEREFORE, Plaintiffs prays for judgment as set forth below.

**COUNT II**
**Conspiracy to Violate RICO, Violation of 18 U.S.C. § 1962(d)**
**(Against All Defendants)**

116.     The Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

117.     Upon information and belief, the RICO Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity. This conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

118.     Upon information and belief, the RICO Defendants agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

119.     Each RICO Defendant knew about and agreed to facilitate the Enterprise's scheme to obtain property from Plaintiffs and induce Plaintiffs to unwitting participate in Bank Fraud. It was part of the conspiracy that the RICO Defendants and their co-conspirators would commit a pattern of racketeering activity in the conduct of the affairs of the Enterprise, including the acts of racketeering set forth in paragraphs, 77 through 110 *supra*.

120.     As a direct and proximate result of the RICO Defendants' conspiracy, the acts of racketeering activity of the Enterprise, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in its

business and property, including loss of funds, loss of financial opportunity related to those funds and damage to Plaintiffs' reputation and goodwill; and the attorneys' fees and costs to defend itself in objectively baseless, improperly motivated threats of legal action disparagement of their credit and reputations, the attorneys' fees and costs associated with exposing the RICO Defendants' pervasive fraud and in recovering the funds stolen by the RICO Defendants

121.    Pursuant to 18 U. S.C. § 1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

122.    Plaintiffs are further entitled to, and should be awarded, a preliminary and permanent injunction that enjoins Defendants, their assignees and anyone else acting in concert with them-from transferring any funds held in any account under their control to any person other than the Plaintiffs until this Court determines the merits and enters judgment on Plaintiffs' claims against the Defendants in this action.

WHEREFORE, Plaintiffs prays for judgment as set forth below.

### COUNT III
### Civil Theft
(Against the Cardoso and Blessing Defendants)

123.    On the 16th of December Plaintiffs paid the sum of $50,000.00 to Olivia-Ari Corporation (dba Blessing Capital) as a fee for the arrangement of a loan for Plaintiffs.

124.    Similarly, Plaintiffs paid over to defendants Cardoso and Capital Blue on the 22nd of December "Deposit" of $75,000.00 pursuant to a contract entered into between plaintiffs and defendants Capital Blue and Cardoso. (Exhibit 3).

125.    On the 11th of January Plaintiffs wire an additional $25,000.00 to Defendant Cardoso.

126.     As per a written agreement between the Plaintiffs and each of the Blessing Defendants and the Cardoso Defendants these funds were to be retained intact by defendants and should the defendants fail to provide a loan to Plaintiffs, the deposit was to be returned intact and in full to Plaintiffs.

127.     Defendants did not deliver a loan, but rather took the plaintiffs funds and converted them to their own use, knowingly depriving plaintiffs of their money with the intent to temporarily or permanently deprive plaintiffs of their right to the money and benefit thereof, in violation of Florida Statute §812.014.2.

128.     Defendants knowingly and with felonious intent to steal, obtained plaintiff's money by fraud, willful misrepresentation of a future act that they did not, were not able and had no intention to perform, false promises, and deception, with intent to deprive plaintiffs of the right to the property or the benefit therefrom in violation of Chapter 812, Florida Statutes. Pursuant to Florida Statute §772.11, Plaintiff made a final written statutory demand for its property on January 31st, 2018. A copy of the statutory demand was sent to defendants and to their attorneys. (Exhibit 11)

129.     To date defendants have failed to return Plaintiff's property.

130.     As a direct and proximate cause of defendants' unlawful actions, Plaintiff was and continues to be deprived of his right to his property and the benefit therefrom and has suffered actual damages in the minimum amount of $500,000.00.

131.     Pursuant to Florida Statute §772.11, plaintiffs are entitled to treble damages in the minimum amount of $1,500,000.00 for the theft of their money committed by Defendants. As a direct result of Defendants depriving Plaintiff of his right to possess and enjoy his money and the benefit therefrom, and Defendants' continuing failure and refusal to return

Plaintiff's property, plaintiffs were required to retain counsel and are obligated to pay counsel a fee.

132.     Plaintiffs are entitled to an award of attorneys' fees pursuant to Fla. Stat. §772.11.

WHEREFORE, Plaintiff demands judgment in its favor and against defendants Cardoso and Capital Blue, jointly and severally, as follows:

     I.     Treble damages in the amount of $1,500,000.00;

     II.     Pre-judgement Interest;

     III.     Attorneys' fees and costs incurred in this matter;

     IV.     Any other and further relief this court deems proper.


**COUNT IV**
Fraud
(Against the Cardoso Defendants, the Blessing Defendants, Steve Sughrim, World Wide
Executive Consultants, Ethan Ferrell and Michael Jordan)

133.     In an intentional, malicious and fraudulent scheme to cheat and defraud Plaintiffs, Defendants directly and/or through the actions of their agents, servants and/or employees, made misrepresentations, committing the following improper acts.

134.     Via telephone calls and electronic mail on the 12th of December 2017 Defendants promised to obtain corporate financing for Plaintiffs.

135.     On the 14th of December 2017 the Blessing Defendants entered into a contract with Plaintiffs promising to facilitate a corporate loan for Plaintiffs.

136.     On the   20th of December the Cardoso Defendants entered into an agreement to provide corporate financing to Plaintiffs of up to $100,000,000 (one hundred million Dollars)

137.    No funding was delivered, and the refundable deposits paid to Defendants were converted for Defendants own use.

138.    Neither the Cardoso Defendants nor the Blessing Defendants had any capability to provide any form of loan to Plaintiffs.

139.    Defendants WWEC, Ferrell and Jordan were aware that the Cardoso Defendants were unable to provide a loan or a viable financial instrument to underwrite a loan.

140.    Despite this knowledge, on the 14th of December 2017 and again on the 5th of January 2018 Jordan and Ferrell continued to assure Plaintiffs of the ability of the Cardoso Defendants to provide financing, knowing full well that such statements were untrue.

141.    On the 22nd of January the Blessing Defendants sent Plaintiff an invoice for $300,000.00 which was not owed demanding payment for service not contracted for and never provided.

142.    Subsequently, the Blessing Defendants threatening legal action against Plaintiff in furtherance of their illegal scheme and engaged third parties to attempt to extort funds from Plaintiffs.

143.    Because the Defendants fraudulently induced Plaintiff to detrimentally rely on their misrepresentations and omissions, Plaintiffs are entitled the return of the converted funds of $150,000.00 plus damages in the amount of $80,000,000.00 (Eighty-million US Dollars).

**COUNT V**
**Fraudulent Misrepresentation**
(Against the Cardoso Defendants, the Blessing Defendants, Steve Sughrim, Michael Jordan and Ethan Ferrell)

144.    In making the misrepresentations and omissions described herein to Plaintiffs, the Defendants made a series of fraudulent misrepresentations:

145.     Misrepresenting the ability of Defendants to provide valid financial instruments.

146.     Representing the validity of a fraudulent bank instrument.

147.     Claiming payment for bank instruments never delivered.

148.     Claiming converted funds pursuant to false invoices.

149.     Attempting to receive funds pursuant to a fraudulent invoice

150.     Because of the negligent misrepresentations and omissions of the Defendants Plaintiffs is entitled the return of $150,000.00, plus damages in the amount of $80,000,000.00.

**COUNT VI**
**Breach of Contract**
(Against the Blessing and Cardoso Defendants)

151.     The Plaintiffs and Defendants each entered into valid and enforceable contracts (the Contracts). (Exhibit 1 and 2)

152.     Plaintiffs have fully performed and tendered all performance required under the Contracts, paying all sums required. Pursuant to the Contract Defendants were to provide a business loan to Plaintiff, acceptable to plaintiffs, within 14 days of the signature of the contract.

153.     Defendants have breached their obligations to set forth in the Contract by failing to provide any valid business loan as required in the contract, and failure to return the Deposit as specified in the contract and failure to pay the contractually agreed non-performance penalty.

154.     Defendants have also breached the implied covenant of good faith and fair dealing by acting to deprive of the benefits of the Contract and the proceeds from the transaction contemplated in the Contract.

155.     The Contract by its terms, specified that in the case of non-performance the defendants would immediately repay plaintiffs the respective "Deposits" of $100,000 and $50,000. and agreed damages of $2,000,000 (Two Million Dollars). (Exhibit 1)

156.     Plaintiffs have demanded the payment of these sums; defendants have not complied.

157.     Plaintiffs are entitled to the sums contractual agrees plus other specific damages to be determined at trial.

WHEREFORE, Plaintiffs prays for judgment as set forth below.

## PRAYER FOR RELIEF

*1. On the First and Second Claims for Relief:*
   I.   For general damages according to proof at trial, trebled according to statute 18 U.S.C § 1964, but not less than $80,000,000 (Eighty million US Dollars);

   II.  For prejudgment interest according to statute;

   III. For Plaintiffs' reasonable attorney's fees according to statute

*2. On the Third Claim for Relief:*
   I.  For the return of the Deposited sums;

   II. For Treble damages as provided by Florida Statue.

*3. On the First, Second, Fourth, Fifth and Sixth Claims for Relief:*
   I.  For general damages according to proof at trial;

   II. For equitable relief as appropriate pursuant to applicable law, including but not limited to issuing a temporary restraining order, a preliminary injunction and a permanent injunction that bars Defendants, their assignees and anyone else acting in concert with them from transferring any funds to any person other than the Plaintiffs

III.   Punitive damages in an amount to be proven at trial.

IV.   A freeze on all bank accounts in the United States and elsewhere, wherever located, tangible and intangible property and all other financial assets, bank and investment accounts of all the defendants.

 V.   Awarding Plaintiffs reasonable attorneys' fees, expenses and costs incurred in bringing and prosecuting this action pursuant to the Agreement, applicable statutes, and common law; and

VI.   Awarding such further equitable relief as the Court deems just and proper.

## <u>TRIAL BY JURY REQUEST</u>

Plaintiffs request a trial by jury on all issues so triable.

Dated:        Miami, Florida
             May 14, 2019

                    Yours, etc.

        By:     _____/s/_____
                Blanca M. Valle Esq
                1408 Brickell Bay Drive #411
                Miami, Florida 33131
                (305) 302 0002
                Bvalle77@hotmail.com
                Florida Bar Number 0631221

        By:     _ _____/s/_____
                Lawrence Daniel O'Neill
                240 Central Park South
                New York, NY 10019

35

(917) 675 4864
Attorneys for Plaintiff

| Ref | From | To | Date | Format | Statute | Description and Complaint Reference |
|---|---|---|---|---|---|---|
| 1 | Joshua Blessing, Steve Sughrim | Blake Simpson and Tyler Douglas | 12/13/17 | Telephone | Racketeering, 18 U.S.C. §1962 Wire Fraud, 18 U.S.C §1343 | Telephonic meeting where Joshua Blessing committed to provide Coin Metric LLC with corporate funding of up to $100 million in return for the payment of a fee. |
| 2 | Steve Sughrim | Joshua Blessing (Blessing Capital) (CC: Blake Simpson and Tyler Douglas) | 12/13/2017 | Email | Wire Fraud, 18 U.S.C §1343 Mail Fraud 18 U.S.C §1341 | Steve Sughrim sends an email (See **12-23-2018 – Steve Sughrim – Email Address**) thanking Joshua for the meeting we had earlier that night. In this meeting, Josh stated that he could help Coin Metric get a financial instrument of $25,000,000 or $100,000,000. After listening to Joshua, Coin Metric decided that $100,000,000 was the best way to move forward. After the call, Blake and Tyler ask Steve if Joshua is legitimate because this is a lot of money, and Steve said this is a 100% legitimate deal and he has known Josh for a long time through Church. Steve assures Blake and Tyler that Blessing Capital does this all the time and we are in good hands. |
| 3 | Joshua Blessing (Blessing Capital) | Tyler Douglas (CC: Blake Simpson, Steve Sughrim, Kelly Haines (Blessing Capital)) | 12-14-2017 | Email | Wire Fraud, 18 U.S.C §1343 Mail Fraud 18 U.S.C §1341 | Joshua sends an email (See **12-14-2017- Email – Joshua Blessing – Financial Agreement**) with a fee agreement (See **BC Finder & Financial Agreement)** and instructions to sign and notarize. Once the fee agreement is processed, Josh states he will work with the lender's compliance officer to set up an on-boarding call. After the on-boarding process is complete, Coin Metric will pay a processing fee and then Blessing Capital will issue the lender's application and funding agreement. |
| 4 | Steve Sughrim | Joshua Blessing (CC: Blake Simpson and Tyler Douglas) | 12-14-2017 | Email | Wire Fraud, 18 U.S.C §1343 Mail Fraud 18 U.S.C §1341 | Steve sends Joshua a signed and notarized copy of the BC Finder and Financial Agreement by Coin Metric Officers (See **12-14-2017 – Email – Steve Sughrim – Signed and Notarized BC Finder Financial Agreement** and **Signed and Notarized BC Finder Financial Agreement.** |

| 5 | Blake Simpson and Tyler Douglas | Joshua Blessing | 12/14/2017 | Voice Call | Wire Fraud | After signing the agreement, Blake Simpson Tyler Douglas called Blessing. They again explained that they were novices at this kind of financing but questioned borrowing $100M without having to sign any personal guarantees (Blessing had only stated that the mechanism of funding was a "Financial Instrument"). Steve and Blake called Joshua, and Blake asked whether any officers of Coin Metric would have to sign personal guarantees. Joshua hesitated to answer the question, but then stated that no one with Coin Metric would have to sign personal guarantees. |
| 6 | Tyler Douglas | Joshua Blessing (CC: Blake Simpson, Steve Sughrim) | 12-15-2017 | Call/Follow-up Email | Wire Fraud, 18 U.S.C §1343  Mail Fraud 18 U.S.C §1341 | Joshua sets up a compliance call. He asks Plaintiffs what they are going to do with the money. Plaintiffs told him that the money would be used for a large Bitcoin Mine ($75,000,000 worth) as well as two ICO's. We followed up with him over email (**See Funding Schedule**) to confirm the values. Joshua also asked us not to disclose his 1% fee to any of the other parties in the transaction. |
| 7 | Joshua Blessing | Steve Sughrim (CC: Blake Simpson, Tyler Douglas, Kelly Haines) | 12-15-2017 | Email | Wire Fraud, 18 U.S.C §1343  Mail Fraud 18 U.S.C §1341 | Joshua sent out a copy of the executed, mutual accepted, agreement (See **12-15-2017 – Email – Joshua Blessing – Executed Financial Agreement** and **Coin Metric ICO Finders**) |
| 8 | Tyler Douglas | Joshua Blessing, Kelly Haines, Anna Blessing | 12/16/2017 | Electronic transfer | Racketeering, 18 U.S.C. §1962  Transportation of Stolen Property 18 U.S.C. §2314,  Receipt of | Tyler Douglas send Joshua Blessing $50,000.00 as a deposit in four separate tranches (3 tranches on 12/16/2018 and 1 tranche on 12/18/2018). |

| | | | | | | |
|---|---|---|---|---|---|---|
| 9 | Joshua Blessing | Steve Sughrim (CC: Blake Simpson, Tyler Douglas, Kelly Haines) | 12-16-2017 | Email | Racketeering, 18 U.S.C. §1962; Wire Fraud, 18 U.S.C §1343; Mail Fraud 18 U.S.C §1341; Receipt of Stolen | Joshua confirmed that he received three separate payment totaling to $48,582.96 (See **12-16-2017 – Email – Joshua Blessing – Receipt of Funds**) |
| 10 | Joshua Blessing | Tyler Douglas (CC Steve Sughrim, Blake Simpson, Kelly Haines) | 12-18-2017 | Email and Mail | Racketeering, 18 U.S.C. §1962; Wire Fraud, 18 U.S.C §1343; Mail Fraud 18 U.S.C §1341; Receipt of Stolen Property 18 U.S.C §2315 | Joshua sent Coin Metric an email (**See 12-18-2017 – Email – Joshua Blessing – Application and Receipt of Funds**) that contained a receipt for a payment of $$48,582.96 (See **Coin Metric Receipt of Partial Payment**). In addition, Joshua attached the application consisting of a KYC and CIS (See **KYC** (See **Know Your Client Form** and **CIS Package**). The email stated that Coin Metric needs to complete and return these documents to Blessing Capital, and Blessing Capital will submit them to the lender. |
| 11 | Joshua Blessing | Steve Sughrim (CC Blake Simpson, Kelly Haines, Tyler Douglas) | 12-20-2017 | Email | Wire Fraud, 18 U.S.C §1343 Mail Fraud 18 U.S.C §1341 | Joshua sent an email (See **12-20- 2017 – Email – Joshua Blessing – Coin Metric SBLC 100m Contract**) containing a contract from the Lender Bernardo Cardoso, for $100M SBLC (See **Coin Metric SBLC 100m Contract**) |
| 12 | Joshua Blessing, Kelly Haines, Steve Sughrim | Blake Simpson, Tyler Douglas | 12-21-2017 | Conference Call | Wire Fraud, 18 U.S.C §1343 | Joshua told us how great this contract is and that we are lucky the provider is willing to guarantee us $2M if he defaults on the contract. He reiterated that we are in a really good place. |
| 13 | Blake Simpson | Joshua Blessing (CC Tyler Douglas) | 12-20-2017 | Email | Wire Fraud, 18 U.S.C §1343 Mail Fraud 18 U.S.C §1341 | Blake sent a signed copy of the Coin Metric SBLC 100m Contract back to Joshua (Blessing Capital) (See **12-20-2017 – Blake Simpson – Email – Coin Metric Signed 100M SBLC** and **20171220824614930**). |

| 14 | Joshua Blessing | Tyler Douglas (CC Steve Sughrim, Blake Simpson, Kelly Haines) | 12-22-2017 | Email | Wire Fraud, 18 U.S.C §1343; Mail Fraud 18 U.S.C §1341 Laundering of Financial Instruments, 18 U.S.C §1952 | Joshua sent an email (See **12-22-2017 – Joshua Blessing – Email – Executed SBLC**) that contained a fully executed SBLC (See **PTF Executed Document DO – SBLC 2017**). He also requested that we wire the $75K to the lender quickly to close the deal. |
| 15 | Joshua Blessing | Tyler Douglas | 12-22-2017 | Text Messa ge | Wire Fraud, 18 U.S.C §1343 Racketeering, 18 U.S.C. §1962; | Joshua sent the banking information for the wire to Tyler Douglas. Joshua also called and instructed Tyler to get a cashier's check and deposit it at the provider's bank, Wells Fargo. |
| 16 | Tyler Douglas | Bernardo Cardoso | 12-22-2017 | Cashi er's check deposi ted directl y at Wells Fargo | Transportation of Stolen Property 18 U.S.C. §2314, Receipt of Stolen Property 18 U.S.C §2315 Racketeering, 18 U.S.C. §1962; | Tyler Douglas deposited a cashier's check of $75,000 into the account ~~of od~~ Bernardo Cardoso specified on the contract (which Joshua Blessing confirmed). See **IMG_0215** and **$75,000 Cashier's Check**. |
| 17 | Joshua Blessing | Steve Sughrim (CC Blake Simpson, Kelly Haines and Tyler Douglas) | 12-28-2017 | Email | Receipt of Stolen Property 18 U.S.C §2315 Racketeering, 18 U.S.C §1962; | Joshua sent an email saying that the $75,000 was received at the provider's bank, but the funds would not clear until January 4, 2018. See **12-28-2018 – Joshua Blessing – Email – Delay of funds**. |

| 18 | Kelly Haines | Blake Simpson, Tyler Douglas | 12/29/2017 | Voice Call | Wire Fraud | Blake calls Kelly Haines explains his lack of familiarity with bank instruments and asks several questions regarding monetizing the instrument. Kelly indicates that Coin Metric should be able to monetize 100% of the instrument and there should be no issues. Coin Metric (Blake and Tyler) poses several questions to Blessing Capital regarding the SBLC and in particular questions if Coin Metric needs special bank accounts for receiving and monetizing the SBLC – They are told that no, once the bank received the SBLC they will advance 100% of its value. |
| 19 | Joshua Blessing | Blake Simpson (CC Tyler Douglas, Kelly Haines) | 1-8-2018 | Email | Receipt of Stolen Property 18 U.S.C §2315 Racketeering, 18 U.S.C. §1962; | Joshua sent an email that contained a signed/notarized letter from Bernardo Cardoso stating that the funds were received. **See 05 – Funds Confirmation Letter** and **1-8-2018 – Email – Joshua Blessing – Confirmation of Funds from Provider**. <br><br> ***Note: Joshua called Blake and Tyler to let them~~us~~ know we could contact the provider since we now have his contact information listed on the letter. |
| 20 | Michael Jordan, Joshua Blessing, Kelly Haines | Blake Simpson, Tyler Douglas | 1-5-2018 | Conference Call | Wire Fraud, 18 U.S.C §1343; Mail Fraud 18 U.S.C §1341 Laundering of Financial Instruments, 18 U.S.C §1952 | Joshua set up a meeting with Michael Jordan from World Wide Executive Consultants to address questions regarding the SBLC. During the conference call, Michael Jordan stated the instrument would come from a domestic institution, most likely Merrill Lynch or Wells Fargo. He also stated that he could do the monetizing of the instrument for 15 – 30K. He reiterated that he's here to see the entire process out with Coin Metric. See **Meeting Minutes_1-5-2018**. |
| 21 | Joshua Blessing | Blake Simpson, Tyler Douglas, Kelly Haines | 1-9-2018 | Email | Receipt of Stolen Property 18 U.S.C §2315 Racketeering, 18 U.S.C. §1962; | Joshua sent an email confirming that he received the $50,000 from Coin Metric. See **1-9-2018 – Email – Joshua Blessing – Confirmation that Finder Retainer has been paid and the delay for receipt** and **Coin Metric Finder's Fee Receipt**. |

| 22 | Joshua Blessing | Blake Simpson, Tyler Douglas, Kelly Haines | 1-10-2018 | Email | Wire Fraud, 18 U.S.C §1343; Mail Fraud 18 U.S.C §1341 Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C. §1344 | Joshua forwarded Coin Metric wire instructions from the provider and attached the Swift MT-760 from Royal Bank of Canada. See **1-10-2018 – Email – Joshua Blessing – Swift Confirmation of 25M Euros and attached document from RBC and RBC_BOA_?25M SBLC_ SWIFT NET_MT760_BANK TRANSMISSION_CONFIRMATION.** |
| 23 | Tyler Douglas | Joshua Blessing | 1-10-2018 | Phone Call | Wire Fraud, 18 U.S.C §1343; Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C. §1344 | Tyler called Joshua and asked him why the amount was 25M euros instead of USD, and Joshua told him that they probably made a mistake; however, Joshua instructed Tyler not to bring it up and just pocket the remainder of the funds. Tyler also brought up the fact that the bank was not domestic, and Josh told him that this is the number one bank in Canada. |
| 24 | Tyler Douglas | Bernardo Cardoso | 1-12-2018 | Email | | Tyler sent an email to Bernardo Cardoso with International Swift Codes. |

| 25 | Joshua Blessing, Kelly Haines, Michael Jordan (entered half way into the call) | Blake Simpson, Tyler Douglas | 1-12-2018 | Conference Call | Wire Fraud, 18 U.S.C §1343; Mail Fraud 18 U.S.C §1341 Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C. §1344 | Tyler started off the meeting by saying there was discrepancy with the MT-760, which infuriated Joshua. He started using an excessive amount of profanity and said, "you will do this **** transaction." After about 15 – 20 minutes of outrage, Joshua finally calmed down and we told him that we had found sources that stated any bank documentation involving Ahmet Gulen and RBC is fraudulent. Michael Jordan jumped on the phone and told us he would get the bottom of this and he doesn't play games. See **Meeting Minutes 1-12-2018 (1).** |
| --- | --- | --- | --- | --- | --- | --- |
| 26 | Joshua Blessing, Kelly Haines, Bernardo Cardoso, Ethan Ferrell (World Wide Executive Consultants) | Blake Simpson, Tyler Douglas | 1-12-2018 | Conference Call | Wire Fraud, 18 U.S.C §1343; Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C. §1344 | Blake and Tyler bring up the same concerns to Bernardo and Ethan. Bernardo stated he doesn't play games and he would address our concerns about the instrument. He stated that he actually knows the ordering customer in Turkey. He said the guy is very paranoid. Bernardo said he would figure out if something funny was going on. Ethan tried to brush the post we found as a random internet post from a disgruntled customer. Bernardo said we should look into getting a CMA account as it would be a better account to receive funds into (however, this was not specified in the contract). See **1-12-2018 Meeting Minutes (2).** |
| 27 | Kelly Haines, Joshua Blessing (about ½ way though the call) | Blake Simpson, Tyler Douglas | 1-12-2018 | Phone Call | Wire Fraud, 18 U.S.C §1343; Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C. §1344 | After the meeting with Bernardo and Ethan, Kelly called Tyler and Blake. Kelly asked what he need to get from the provider in regard to validate there is a working relationship with the provider, such as background and compliance from Gulen Resources. Tyler and Blake stated we need some type of evidence.<br><br>Joshua was connected in the middle of the call and started yelling at Coin Metric for wanting evidence. Coin Metric stated that Kelly asked what types of evidence we wanted. Then Joshua was mad at Kelly. Joshua made it very clear that this is not Blessing Capital's Department. |

| 28 | Kelly Haines | Tyler Douglas | 1-17-2018 | Email | Wire Fraud, 18 U.S.C §1343; Mail Fraud 18 U.S.C §1341 Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C. §1344 | Kelly stated that he received a call from Joshua and that the reissue of the SBLC is in process. Coin Metric does not have to re-do any steps. See **1-17 – 2018 – Email – Kelly Haines – Promise of re-issue of the SBLC.** |
| --- | --- | --- | --- | --- | --- | --- |
| 29 | Kelly Haines | Blake Simpson (CC: Joshua Blessing) | 1-17-2018 | Email | Wire Fraud, 18 U.S.C §1343; Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C. §1344 | Kelly sent over two locations in Bellevue, Washington that have CMA accounts. See **1-17-2018 – Email – Kelly Haines – Advising on what Banks have CMA accounts (2).** |
| 30 | Kelly Haines | Blake Simpson (CC: Joshua Blessing) | 1-17-2018 | Email | Wire Fraud, 18 U.S.C §1343; Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C. | Kelly offers to help Coin Metric, Blake, set up a bank account to receive the instrument. See **1-17-2018 – Email – Kelly Haines – Asking if he can advise us in setting up a bank account.** |
| 31 | Kelly Haines | Blake Simpson (CC: Joshua Blessing) | 1-18-2018 | Email | Wire Fraud, 18 U.S.C §1343; Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C. §1344 | Kelly sent an email explaining how Joshua had found a good account option for us from Merrill Lynch, and he attached a link that explained the account. See **1-18-2018 – Email – Kelly Haines – Advising on more bank options and MerrillLynchSelf0DirectedCMAAcountAgreement** |

| 32 | Joshua Blessing, Kelly Haines, Anna Blessing | Tyler Douglas, Blake Simpson, Steve Sughrim | 1-19-2018 | Conference Call | Wire Fraud, 18 U.S.C §1343; Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C. §1344 | Joshua and Kelly called for a meeting and introduced Anna Blessing to Coin Metric. They told us that the SBLC was at risk, and finance is all about the energy. Tyler and Blake were blamed for the failure of getting a CMA account at Merrill Lynch for negative energy and bad posture. Anna asked us if we had ever watched the show *Billions* and we said no. She said we need to start acting with that type of energy with the bank. Anna also stated that everyone on the call had put a lot of resources into making the SBLC possible. At the end of the call, we were tasked with putting together a script for the Blessing Capital Team to review before we enter another bank. |
|----|---------------------------------------------|---------------------------------------------|-----------|-----------------|------------------------------------------------------------------------------------------------------------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 33 | Blake Simpson | Tyler Douglas, Steve Sughrim, Joshua Blessing, Kelly Haines, Anna Blessing | 1-19-2018 | Email | Wire Fraud, 18 U.S.C §1343; Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C. §1344 | Blake sent an email with the Investment Bank Script for Discussion over to the Blessing Capital Team to review. See **1-19-2018 – Email – Blake Simpson – Investment Bank Script requested by Joshua and Kelly** and **Coin Metric Bank Introduction 1-19-2018 copy** |

| 34 | Kelly Haines | Blake Simpson, Joshua Blessing, Anna Blessing, Tyler Douglas, Steve Sughrim | 1-19-2018 | Email | Wire Fraud, 18 U.S.C §1343; Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C. §1344 | Kelly sent over questions to prepare Coin Metric for the bank interview and discussion in the morning. Kelly also made a statement in the email that Blessing Capital is not Coin Metric's advisers, consultants, or legal counsel as they are simply passing on information gleaned from past experiences. Coin Metric was confused on this point as Blessing Capital has been advising Coin Metric on every point of the transaction, including the CMA account. Kelly also made a statement that Blessing Capital has gone above and beyond our duties due to the abnormal circumstances of this transaction. Coin Metric was confused reading this statement as well. See **1-19-2018 – Email – Kelly Haines – Prep questions for Coin Metric and CMA (1) and CM prep questions (2)** |
| 35 | Kelly Haines, Joshua Blessing, Anna Blessing | Blake Simpson, Steve Sughrim | 1-20-2019 | Confe rence Call | Wire Fraud, 18 U.S.C §1343; Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C. §1344 | Joshua and Anna set up a conference call to discuss the bank script and how to approach the bank. Coin Metric was told to watch *Billions* and have positive energy. We went over a number of words not to say at the bank. Phrases to talk to the banker about. Anna and Kelly even proposed using a DBA to shield the core function of the business. See **coin metric minutes 12022018** (Blessing Capital Version) and **1-20-2019 – Meeting Minutes** (Coin Metric Version) |

| 36 | Kelly Haines | Blake Simpson, Steve Sughrim, Tyler Douglas, Joshua Blessing, Anna Blessing | 1-22-2018 | Email | Racketeering, 18 U.S.C §1962 Wire Fraud, 18 U.S.C §1343 | Kelly sent us an invoice for $300,000 as a 1% commission for the 25M Euro tranche. This was uncalled for and of all people in the transaction, Blessing Capital was completely aware that we had not received funds or evidence at our bank that a MT-760 had arrived. **See 1-22-2018 – Email – Kelly Haines - Invoice $300,000 and CoinMetricInvoice#1331**. Also, the invoice due date was on 1-22-2018.<br><br>On a call later that day between Steve Sughrim and Kelly Haines, according to Steve Sughrim, Kelly seemed confused as to why Joshua was sending an invoice, and then made a comment that Joshua and Anna have a lot of money tied up in this transaction. |
| 37 | Ahmet Gulen | Tyler Douglas | 1-23-2018 | Email | | Ahmet Gulen emails Tyler and points him to his personal web page and to read the fraud alert notice carefully.<br><br>**See 1-23-2018 – Email - Ahmet Gulen.** |
| 38 | Kelly Haines | Blake Simpson | 1-25-2018 | Phone Call | Wire Fraud, 18 U.S.C §1343; Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C. §1344 | A phone conversation between Kelly Haines and Blake Simpson occurred. In the conversation, Kelly asked how setting up the bank account at Fidelity was going, and Blake indicated that Coin Metric was working through it. Kelly asked how Coin Metric was going to address the Invoice. Blake stated that (1) take his name off the invoice and (2) Coin Metric has not received a MT-760 or any funds and our bank has not been able to verify that this message was ever sent. Blake told Kelly he wanted to focus on setting up the bank account. |

| 39 | Kelly Haines | Blake Simpson, Tyler Douglas, Steve Sughrim, Joshua Blessing, Anna Blessing | 1-26-2018 | Email | Wire Fraud, 18 U.S.C §1343; Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C. §1344 | Kelly sends an email that was in direct conflict with what was discussed on the phone call the day before. Kelly also took the statement out of context in an email from Blake Simpson: "Thank you Kelly for your team's effort, which is clearly above and beyond the contractual obligations" which was directed at their willingness to advise Coin Metric even though their contract prohibited it. Kelly cites the document that Bernardo provided Blessing Capital from Royal Bank of CanadaBC as evidence that funds were delivered. In addition, Kelly Haines states he will not be able to proceed any further until the negative balance is resolved. See **1-26-2018 – Email – Kelly Haines – Account Status.** |
| 40 | Tyler Douglas | Bernardo Cardoso | 1-27-2018 | Email | | Tyler sends Bernardo Cardoso an email documenting the situation and asks Bernardo Cardoso for a formal response to all of the concerns that were brought up during the 1/12/2018 meeting prior to moving forward with transaction. Bernardo promised to address them during 1/12/2018 meeting. See **1-27-2018 – Email – Tyler Douglas – To Cardoso regarding Addressing Concerns.** |
| 41 | Bernardo Cardoso | Tyler Douglas | 1-28-2018 | Email | Wire Fraud, 18 U.S.C §1343; Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C. §1344 | Bernardo states that we sent him a domestic swift and then later sent him an international swift code. He then dismisses any concern about Ahmet Gulen. He states that Royal Bank of CanadaBC is one of the highest rated banks in Canada. He then claims it is our fault that we could not receive the swift code. Lastly, he offers to re-issue an instrument for additional fee. See **1-28-2018 – Email Bernardo Cardoso – Response to Coin Metric's Concerns SBLC 100M 2.** |

| 42 | Tyler Douglas | Bernardo Cardoso | 1-28-2018 | Email | | Tyler states that Michael Jordan at World Wide Executive Consultants told us the wire would be coming domestically. He further states that it does not specify in any contract or formal communication that this was going to be an international wire. Lastly, Tyler requests that Bernardo address all of Coin Metric's concerns. See **1-28-2018 – Email Bernardo Cardoso – Response to Coin Metric's Concerns SBLC 100M 2.** |
| 43 | Bernardo Cardoso | Tyler Douglas (CC Ethan Ferrell) | 1-28-2018 | Email | Wire Fraud, 18 U.S.C §1343; Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, | Bernardo Cardoso states are concerns are not warranted, and states that it is common knowledge that all swifts are international. See **1-28-2018 – Email Bernardo Cardoso – Response to Coin Metric's Concerns SBLC 100M 2.** |
| 44 | Anna Blessing | Blake Simpson, Kelly Haines, Joshua Blessing | 1-31-2018 | Email | Racketeering, 18 U.S.C. §1962; Wire Fraud, 18 U.S.C §1343; Laundering of Financial Instruments, 18 U.S.C §1952; Bank Fraud, 18 U.S.C | Anna states that Coin Metric is in Gross Breach of Contract based on the correspondence with Bernardo Cardoso. She goes onto say that she will have to file a legal complaint against both Blake and Tyler personally and all company officers and members. See **1-31-2018 – Email – Anna Blessing – Breach of Contract (1-5).** |
| 45 | Tyler Douglas | Anna Blessing, Joshua Blessing, and Kelly Haines | 1-31-2018 | Email | | Tyler responds to Anna stating that the validity of the instrument is in question because simple compliance questions cannot be answered. Since Blake is on travel, Tyler is communicating, and Tyler reminds them that Blessing Capital has used 3 different points of contact interchangeably through the duration of the transaction. See **1-31-2018 – Email – Anna Blessing – Breach of Contract (6).** |

| 46 | Jim Peterson with Apex | Tyler Douglas | 2-2-2018 | Call to Voice mail | Racketeering, 18 U.S.C. §1962; Extortion, 18 USC§875 | Jim Peterson with Apex stated that he was going to visit the addresses of Tyler Douglas and Blake Simpson to do a private investigation and asset validation. See **Apex**. |
| 47 | Jim Peterson with Apex | Blake Simpson | 2-2-2018 | Call to Voice mail | Racketeering, 18 U.S.C. §1962; Extortion, 18 USC§875 | Jim Peterson with Apex stated that he was going to visit the addresses of Tyler Douglas and Blake Simpson to do a private investigation and asset validation. See **Apex**. |
| 48 | Todd Harris with Recovery Solutions Group, LLC | Tyler Douglas | 2-5-2018 | Call to Voice mail | Racketeering, 18 U.S.C. §1962; Extortion, 18 USC§875 | Todd Harris called and left a message stating that he wants to try to figure out if we can come to resolution with Olivia-Ari Corp (dba Blessing Capital) prior litigation. He stated that Coin Metric owes Olivia Aria $300,000. See **Todd Harris #1**. |
| 49 | Todd Harris with RSG LLC | Blake Simpson | 2-5-2018 | Call to Voice mail | Racketeering, 18 U.S.C. §1962; Extortion, 18 USC§875 | Todd Harris called and left a message stating that he wants to try to figure out if we can come to resolution with Olivia-Ari Corp (dba Blessing Capital) prior litigation. He stated that Coin Metric owes Olivia Aria $300,000. See **Todd Harris #1**. |
| 50 | Todd Harris with RSG LLC | Tyler Douglas and Blake Simpson | 2-5-2018 | Email | Racketeering, 18 U.S.C. §1962; Extortion, 18 USC§875 | Todd sends an email explaining that Blessing Capital has retained RSG LLC against both you and Coin Metric LLC for the purpose of filing complains and litigation/credit reporting. He notes that he'll let us know when this will be scheduled in the courts. See **2-5-2018 – Email – Todd Harris – RSG Collect**. |
| 51 | Todd Harris with RSG LLC | Tyler Douglas and Blake Simpson | 2-8-2018 | Email | Racketeering, 18 U.S.C. §1962; Extortion, 18 USC§875 | Todd sends a follow up email stating that there is conference call set for 2/12/2018. He states that the actual Litigation Filing & Credit Reporting against both of you and Coin Metric LLC, has been scheduled for Thursday February 15th, 2018. He then states that our counsel may reach out directly. See **2-5-2018 – Email – Todd Harris – RSG Collect**. |

| 52 | Todd Harris with RSG LLC | Tyler Douglas | 2-8-2018 | Call to Voice mail | Racketeering, 18 U.S.C. §1962; Extortion, 18 USC§875 | Todd calls and leaves a voicemail stating that there is conference call for litigation, and the amount is now at $500,000 due to interest. See **Todd Harris #2**. |
| 53 | Todd Harris with RSG LLC | Tyler Douglas | 2-16-2018 | Call to Voice mail | Racketeering, 18 U.S.C. §1962; Extortion, 18 USC§875 | Todd calls and leaves a voicemail stating that complaint has been filed and RSG has applied to suspend our Visas. See **Todd Harris #3**. |
| 54 | Dave Andrews | Tyler Douglas | 2-16-2018 | Call to Voice mail | Racketeering, 18 U.S.C. §1962; Extortion, 18 USC§875 | Dave Andrews calls and leave a voicemail stating that he wants to attempt to settle the matter between Coin Metric LLC and Olivia-Ari Corp prior to litigation. See **Dave Andrews.** |

## APPENDIX B
## EXHIBITS

Exhibit 1- Contract with Olivia-Ari Corporation (DBA Blessing Capital), and Joshua Blessing.

Exhibit 2- Contract with Bernardo D. Cardoso and Capital Blue Global Investments LLC.

Exhibit 3- Cardoso's Confirmation of the Receipt of Funds.

Exhibit 4 – Copy of the Purported (and Fraudulent) SBLC.

Exhibit 5 – Confirmation of the Wire of an Additional $25,000.00 to Cardoso.

Exhibit 6 – Email from Ahmet Gulen Confirming that the SBLC is a Fraud.

Exhibit 7 – Blessing Invoice for $300,000.00

Exhibit 8 – Email to Cardoso Declaring the SBLC to be Fraud.

Exhibit 9 – Email from Cardoso

Exhibit 10- Email from Anna Blessing

Exhibit 11- Email from Plaintiffs to Anna Blessing

Exhibit 12 – Email from Todd Harris

Exhibit 13 – Demand from Todd Harris for and Additional $200,000.00